## RECTOR OF ST. DAVID'S v. WOOD.

### [S. C. 34 Pac. Rep. 18.]

SPECIFIC PERFORMANCE — BUILDING CONTRACTS.— Although specific performance of a building contract will rarely be enforced, a contract agreeing to furnish stone of a peculiar kind, color, quality, and texture which cannot be procured elsewhere, to erect the walls, will be so far enforced as to require the contractor to permit the owner to take stone sufficient to erect the building, and to use derricks erected at the quarry for hoisting necessary to enable such stone to be taken out, where a large portion of the building has been erected, the contractor is insolvent and unable to complete his contract, and he has received nearly the whole consideration therefor, and it will be necessary if such stone is not furnished to rebuild the structure, or mar its effect by the use of other stone.

Multnomah County: LOYAL B. STEARNS, Judge.

Suit by the rector, wardens, and vestrymen of the Parish of St. David's, a corporation, against Frank Wood, and Virgil E. Watters, the recorder of conveyances of Benton County, Oregon, to enforce the specific performance of a written contract under seal. The facts show that the plaintiff is the owner of certain real property in Portland, Oregon, upon which it is desired to erect a church building; that the defendant Frank Wood is the owner of a stone quarry in Benton County, Oregon, and that on the sixteenth of May, 1892, the parties entered into said contract whereby the defendant agreed to furnish the necessary stone from his quarry, to dress, transport, cut, and lay the same in the walls of said building, furnish other necessary

material, perform the mason work, and complete the same within one hundred working days from the fifth of June, 1892, for the sum of one hundred and sixty-five thousand dollars, payable from time to time as the work progressed, with the express agreement that plaintiff might withhold twenty-five per cent of the amount found due upon the certificate of the architect, until thirty days after the full completion of the contract, and to secure the faithful performance of the conditions thereof he executed and delivered to plaintiff a bond in the sum of four thousand dollars. Plaintiff alleges that it duly performed all the conditions of said contract, paid defendant more than sixteen thousand two hundred dollars thereon, although not more than two thirds of the stonework has been done; that the defendant has ceased to work thereon; that the stone from said quarry is of a peculiar color and quality, and that plaintiff is unable to complete said church in a suitable manner with stone from any other known source; that after the construction of said church was commenced, the defendant executed a mortgage on said quarry to secure a preëxisting debt of three thousand dollars; that there are other outstanding claims against the defendant on account of said church building; that liens have been filed thereon, and that defendant is insolvent; that unless the defendant is required to furnish the stone necessary to complete said building, or if plaintiff is compelled to purchase the same, it will require the expenditure of from six to eleven thousand dollars more than the amount of said bond; that plaintiff has paid the cost of quarrying, transporting, and dressing a quantity of stone from said quarry which defendant is seeking to remove without plaintiff's consent; and that he is also endeavoring to sell and convey said quarry, and refuses to perform his said contract; that the defendant Virgil E. Watters is the recorder of conveyances of Benton County and custodian of the records thereof, and that if any mortgage or other conveyance of

said quarry or of the stone therein, or that was taken therefrom for plaintiff's use, be made by the defendant and recorded in said county, it would cause irreparable damage to the plaintiff for which it would have no adequate remedy at law. The plaintiff prayed that said contract might be specifically performed, and the defendant ordered to furnish the stone and mason work, as therein required, or that if he could not perform the contract, that he be eompelled to furnish the plaintiff the necessary stone from said quarry for the completion of said building free of charge, and that he be restrained from encumbering, conveying, or interfering with the premises on which the quarry is situated, or with any stone therein or taken therefrom for plaintiff's use, and that the recorder of conveyances be enjoined from receiving, filing, or recording any mortgage, deed, or other conveyance of the said premises, and for general relief.

A temporary injunction was issued as prayed for in the complaint. The defendant Virgil E. Watters made default, but the defendant Frank Wood demurred to the complaint, alleging as ground thereof that the court had no jurisdiction to compel the performance of the contract to build, or the required manual service, or to compel the defendant to furnish the stone free of charge; that there is a defect of parties in this, that one Virgil E. Watters, a mere ministerial officer, who has no interest in the subject matter of the suit, and who is not shown to have done, or threatened to do, any act tending to render any decree ineffectual, is joined as a defendant; that two causes of suit are improperly joined, viz., to compel a specific performance, and to convert the defendant Wood into a trustee of his own property for plaintiff's benefit; and that said complaint does not state facts sufficient to constitute a cause of suit. The court overruled this demurrer, and the defendant Frank Wood refusing to further answer or plead, it was decreed that the said written contract be

specifically performed or enforced to the extent that said Frank Wood be required to furnish the stone from his quarry necessary to fully carry out and complete said contract, and that the plaintiff by its officers, agents, and employés be authorized and permitted to enter upon the premises of defendant Frank Wood, and quarry in such manner as is or may be usual, or customary, the stone necessary to fully complete said church building, and to remove a sufficient quantity thereof from said quarry for that purpose; that plaintiff be permitted to use the defendant Wood's derricks at the quarry and at the church building in quarrying, transporting, and raising said stone, until the further order of the court, from which decree the defendant Wood appeals. Affirmed.

*John W. Whalley*, and *Reuben S. Strahan*, (*Martin L. Pipes* on the brief), for Appellant.

A brief consideration of one or two matters will clearly show how utterly without equity the bill is, and will at the same time point out the absolute incapacity of a court of chancery to deal with the questions involved without violating the rudimentary principles on which its power is founded, and will prove the remedy, if any, to be solely at law. The defendant is wholly irresponsible and insolvent. He must eat whilst getting out one thousand two hundred and fifty tons, and work hard for a very long time to do it. Who will supply him with grub, what blacksmith mend and sharpen the tools? nay, who will supply the tools, furnish the powder, fuse, and everything necessary for quarrying? The whole thing ends in a *reductio ad absurdum.* But even if this difficulty were removed, another remains. The quarry is mortgaged, the stone in place is realty, its removal by mortgagor as against mortgagee, waste, and the latter on the attempt of Wood to comply with an order of this court to furnish stone, would undoubtedly have a right to enjoin Wood

from rendering the security less valuable, and to restrain waste. Where then would Wood be ? In contempt if he did not furnish stone, in contempt if he did.

> " You shall and you shan't,
>     You will and you won't;
> If you do you'll be damned;
>     You'll be damned if you don't."

Some early English authorities may be found where courts of equity have enforced the specific performance of building contracts, but the rule is now settled the other way: *Paxton* v. *Newbon,* 2 Sm. & Gif. 437; *Kay* v. *Johnson,* 2 H. & M. 118; *Wertley* v. *Westminister B. C. Co.* L. R. 9 Eq. 538; *Norry* v. *Jackson,* 2 J. & H. 319; *Errington* v. *Aynesley,* 2 Bro. C. C. 343; *Ross* v. *U. P. R. R. Co.* 1 Woolw. 26; *Martin* v. *Hally,* 61 Mo. 196; *Beck* v. *Allison,* 56 N. Y. 367; *Seymore* v. *Delanay,* 15 Am. Dec. 270; *Grundy* v. *Edwards,* 23 Am. Dec. 409; *Whitaker* v. *Vanschoiack,* 5 Or. 113.

In all cases where it is clearly inequitable to grant specific performance the court will refuse it: *Munch* v. *Shovel,* 37 Mich. 166; *St. Paul Div.* v. *Brown,* 9 Minn. 157; *Snell* v. *Mitchell,* 65 Maine, 48; *Quinn* v. *Roath,* 33 Conn. 16; *Willard* v. *Taylor,* 8 Wall. 557; *Bogan* v. *Daughdrill,* 51 Ala. 312; *Daniel* v. *Frasier,* 40 Miss. 507; *O'Brien* v. *Pents,* 48 Md. 562.

*Samuel H. Gruber,* for Respondents.

Where a specific performance of a contract will alone answer the purpose of justice, a court of equity will enforce it: *Stuyvesant* v. *Mayor of New York,* 11 Paige, Ch. 414; Waterman on Specific Performance (Ed. 1881), §17; *Preston National Bank* v. *Geo. T. Smith, M. & P. Co.* 48 Mich. 364 (47 N. W. 502). And such specific performance may be enforced in equity, without regard to the character of

the property involved: *Duff* v. *Fisher,* 15 Cal. 376; Waterman on Specific Performance (Ed. 1881), § 16; *Johnson* v. *Rickett,* 5 Cal. 218, 219; *Clark* v. *Flint,* 22 Pick. 231; *Sullivan* v. *Fink,* 1 Md. Ch. 59; *Lloyd* v. *Wheatley,* 2 Jones' Eq. 267; *Hoy* v. *Hansborough,* 1 Freem. Ch. 533.

When it is ascertained that the contract is founded on a valuable consideration, its mutual enforcement *in specie,* as in this case, is necessary owing to the unpracticability of giving to the new bonds a true valuation in money, and the contract is certain, unambiguous, and reasonable, then the remedy ripens into a right: *Parker* v. *Wray,* 45 Fed. Rep. 716; *Adams* v. *Messenger* (Mass.), 17 N. East. 491–494; *Chance* v. *Beal,* 20 Ga. 143; *Rogers* v. *Saunders,* 16 Me. 92; *Hopper* v. *Hopper,* 16 N. J. Eq. 147; *St. Paul Div.* v. *Brown,* 9 Minn. 157.

Where an award of damages will not put a party in a situation as beneficial to him as if the agreement were specifically performed, equity will enforce the performance: *Phyfe* v. *Wardell,* 2 Edw. Ch. 47 (6 L. Coöp. Ed. 304); *Richmond* v. *Dubuque & S. C. R. Co.* 33 Iowa, 422, 480, 494; *Blanchard* v. *Detroit L. & M. Co.* 31 Mich. 43; *McGarvey* v. *Hall,* 23 Cal. 140; *Somerby* v. *Bunting,* 118 Mass. 279; *Bogan* v. *Daughdrill,* 51 Ala. 312; *Willard* v. *Taylor,* 75 U. S. (8 Wall. 557), 19 L. Coöp. Ed. 501.

Agreements for the assignment of a patent, and for the delivery of chattels, which can be supplied by the vendors alone, and for renewals of leases are among those, which will be specifically enforced, on the ground, that otherwise irreparable injury or damage may be inflicted: *Hull* v. *Petral,* 45 Fed. Rep. 94; *Hapgood* v. *Rosenstock,* 23 Fed. Rep. 86; *N. Y. Co.* v. *Union & Co.* 32 Fed. Rep. 783; *Penn. R. R. Co.* v. *St. Louis & Co.* 118, U. S. 298; *Adams* v. *Messenger,* 147 Mass. 185 (17 N. E. 491); Reeses' Appeal, 122 Pa. St. 392 (15 Atl. 807); Waterman on Specific Performance, §§ 17, 18, 21, 30, 31; Frey on Specific Perform-

ance, § 33; *Blackmer* v. *Stone* (Ark.), 1 S. W. 693; *Parker*
v. *Wray*, Fed. Rep. 716.

In special instances where the circumstances are pecu-
liar or extraordinary either as respects the property, as
where it possesses some unique or special value, or as to
the situation of the parties, where an action for damages
will not afford an adequate remedy. Equity may be
invoked for a specific performance respecting personal
property: *N. Y. Paper Bag Mfg. Co.* v. *Union Paper Bag
Co.* 32 Fed. Rep. 783, 786; *Diamond State Iron Co. v. Todd*
(Del.), 14 Atl. Rep. 24, 35; *Gotschalk* v. *Stein* (Md.), 13
Atl. Rep. 625, 626; *Eckstein* v. *Downing*, 9 Atl. Rep. 626;
*Coffee* v. *Middlesex R. Co.* (Mass.), 16 N. E. 34; *Mechanics'
Bank* v. *Seton*, 1 Peters, 299; *Johnson* v. *Brooke*, 93 N. Y.
337, 343; *Adams* v. *Messenger* (Mass.), 17 N. E. 491, 494;
3 Parsons on Contracts, 331, 332; Waterman on Specific
Performance (Ed. 1881), §§ 18, 19; *Rothholz* v. *Schwartz*,
(N. J.) 19 Atl. 312; *Angus* v. *Robinson* (Vt.), 19 Atl. 993;
*Conn* v. *Mitchell*, 2 West Rep. 62 (115 Ill. 124); *Baum-
gardner* v. *Leavitt*, 12 L. R. A. 776.

MR. JUSTICE MOORE delivered the opinion of the court:

The specific performance of a building contract will
rarely be enforced (Pomeroy, Specific Performance, § 23)
upon the theory, as announced by Sir Lord KENYON, mas-
ter of the rolls, in *Errington* v. *Ainsley*, 2 Brown, Ch. 341,
"that if one person would not build, another might be
found who would," and for the reason given by Lord
THURLOW in *Lucas* v. *Commerford*, 3 Brown, Ch. 166, "that
the court could not undertake to superintend the construc-
tion of a building." Such contracts have in some in-
stances been enforced, but they were exceptions to the
general rule, and are clearly stated by Mr. Justice MILLER
in *Ross* v. *U. P. R. R. Co.* 1 Woolw. 26, as follows: "(1) In
each case the building was to be done upon the land of

the person who agreed to do it. (2) The consideration
for the agreement, in every instance, was the sale or con-
veyance of the land on which the building was to be
erected, and the plaintiff had already by such conveyance
on his part executed the contract. (3) In all of them the
building was in some way essential to the use, or contrib-
utory to the value, of the adjoining land belonging to the
plaintiff."

The prayer of the complaint is for the specific perform-
ance of the building contract, provided it could be granted.
The decree, however, does not fully comply with the
prayer, if it had there might have been just reason for its
reversal. The record shows that the stone which defend-
ant agreed to furnish is of a peculiar kind, color, quality,
and texture, and that no other stone of like character can
be procured; that he had furnished enough of such stone
to build about two thirds of the walls, and if plaintiff can-
not procure a sufficient quantity of the same kind to com-
plete the work, it will be necessary to use other stone and
thus destroy the beauty and harmony of its building, or
the walls must be taken down and rebuilt with other
stone; that defendant is insolvent, and therefore unable to
complete his contract, although he has received nearly the
whole consideration therefor. Under this state of facts,
can a court of equity decree a partial performance, so as
to carry out as near as possible the original intent of the
parties? The contract was to furnish the stone and other
material, and erect the walls. The defendant's pecuniary
condition precludes a specific performance of that part of
his contract which required him to furnish other necessary
material and do the labor, if such a decree were possible
(Pomeroy, Specific Performance § 293); but if he be inca-
paciated from performing it in the precise terms, the court
will, if it is possible, decree a specific execution according
to its substance, by making such variation from unessen-

tial particulars as the circumstances of the case require or permit: *Idem*, § 297.

Courts will not generally decree the specific performance of a contract to deliver personal property (Waterman, Specific Performance, § 16), and yet it was held in *Hapgood* v. *Rosenstock*, 23 Fed. Rep. 86, that "agreements for the assignment of a patent, and for the delivery of chattels which can be supplied by the vendor alone, are among those which will be specifically enforced." This decision was approved by the supreme court of Massachusetts in *Adams* v. *Messenger*, 147 Mass. 185 (17 N. E. 491). Applying these rules to the case at bar, the defendant has stone which cannot be procured from any other quarry, and plaintiff must use it or the harmony of its building will be marred, and since the defendant cannot be required to do that which his pecuniary condition forbids, he can be negatively required to specifically perform the contract by compelling him to allow the plaintiff to take the necessary stone to complete the building. It is a fundamental principle that equity will not decree the specific performance of a contract unless the undertaking to be enforced is founded upon a valuable consideration moving from the party in whose behalf the performance is sought: Pomeroy, Specific Performance, § 57. The contract which is sought to be enforced is under seal, and this constitutes primary evidence of a consideration: Hill's Code, § 753. It is sufficient, however, if some profit is to inure to the promisor, or some detriment to be sustained by the promisee: Waterman, Specific Performance, § 188. The record shows that the contract was awarded to the defendant, and that plaintiff has voluntarily advanced to him a large sum in excess of the amount it would have been compelled to pay under the contract as the work advanced. The defendant having received the payment, ought not now to complain or say there is no consideration for the stone necessary to complete the building. The

plaintiff has already paid for such stone, and the defendant ought not to object to its taking the necessary quantity, since the defendant's pecuniary condition will not permit him to supply it.

The record further shows that defendant has some derricks which he uses at his quarry and at the church building for hoisting stone, which the decree provides the plaintiff may use. The stone cannot be taken from the quarry, loaded upon cars or placed in the building, without the use of these or similar machines; and, since the defendant has them, he is contributing no more than his share when required to permit the use of them by plaintiff. Such use, however, does not mean their destruction, and they must be returned in as good condition as when received, the usual wear thereof excepted. Because the contract has proved unprofitable to the defendant is no reason it should not be enforced as far as practicable. It was fairly entered into, and each party believed it could be completed for the consideration agreed upon, and the court having granted such relief as was equitable under the circumstances of the case, its decree should be affirmed.

The recorder of conveyances of Benton County is enjoined from receiving for record any conveyance of, or incumbrance upon, the quarry premises. An injunction will not usually lie against a ministerial officer to restrain him from doing that which the law requires as a part of his duty, but since he has made default it must be presumed that he acquiesces in the decree.   AFFIRMED.